number 2033. Mr Williams. Morning, everyone. How are you? Morning. All right. Thank you. Good. Thank you. In this case, the government failed to prove that Ephraim Laura had advanced knowledge that his co defendant, Barry Cabin, was armed with a shotgun before he used it to kill a rival drug dealer, Andrew Balcarin. Co defendant cabin was the only insider called by the prosecutors at trial. There are about nine pages of testimony in which cabin describes the events leading up to the shooting. Those pages are found at the Joint Appendix 685 to 693. That testimony, however, provided no evidence that Mr. Laura had advanced knowledge that cabin had acquired a shotgun before he killed Balcarin. So, counsel. Yes. Do I understand correctly that you withdrawn your claim with respect to the statement that was admitted as a co conspirator statement regarding that, that your client had made the call to tell the people in the first car where the victim could be found. Yes, that's correct. So how does that not factor into the analysis? Could a jury not have inferred that the reason they were driving around looking for this guy, which obviously everybody in the first car knew they had a gun. Correct. That the people in the second car shared the intention of going to kill the victim. And that was the purpose of driving to the victim. Right. And we have to accept for purposes of appeal that it was your client who called the first car to tell him where he could be found. Correct. Once they found the gun, once they had the gun in hand. Right. The fact that Mr. Laura identified where Mr. Balcarin was doesn't mean that he knew that there a cabin had a shotgun. No. That the jury could draw and we have to draw all reasonable inferences in favor of whatever verdict the jury returned here, don't we? You do, but that's not a reasonable inference from the very fact that he said you can find Balcarin at whatever the address was doesn't mean that my client knew that dairy cabin had the shotgun that he was going to use to kill Balcarin. That was the only gun that was charged to the jury with regard to count one. Well, he didn't have to know what type of gun or particular gun it was. Right. As long as he knew there was a gun. Right. No, he had to know that cabin had the gun. That's the point. He could. Palmer could have had a gun, but Palmer Palmer shot Balcarin in the leg and didn't kill Balcarin with that shot. So, if I'm understanding you correctly, you're saying that no rational trier of fact could find from these facts that Laura was aware that come on and Palmer had weapons that they were going to use against Balcarin. No, I want to go through that. Briefly. So, combine is the only is the only insider testified. So I'm gonna go through a series of questions did combine testified that Mr Lord knew that his co defendants Palmer and true he possessed firearms at all, or knew where those firearms were hidden. The answer is no. Did combine testify that Mr Lord knew that his co defendants went to true he was residents to retrieve several firearms before the shooting. The answer is no. Did combine testify that Laura was aware. At the time that defendants Palmer and for he'll we're going to provide a shotgun to combine. No. Did combine testify that Laura knew that Palmer and trio had provided him. I guess, counsel you're listening to all the things the testimony that was not right for the jury and that's, that's nice that's a great argument for jury. But on our review, the question is what testimony was before the jury. And what inferences were permissible from that. Right. So, for example, the jury could have based on the testimony concluded that the purpose of these two cars driving around looking for car and was to find them and kill them. And that that knowledge was, that's a reasonable inferences that everybody in the cars both cars shared that knowledge and intent right right that to kill them. We can concede that point. But remember, there are a lot of different ways that people can do serious physical harm to people come on had a reputation of being a thug the prosecutors call them a thug in their summation. He could have used a baseball bat. I didn't want to go. Didn't one person go from car one to cartoon. Yeah, Lopez didn't. And was that Laura right behind the Lumina where they got in with us. Was it, excuse me, wasn't Laura's car right behind the Lumina where the two guns came in. Well, we don't know that we know that the car we use it right behind I don't know exactly when Laura's car pulled in. There's no evidence that anyone in the second car, so it was in the bag that to he'll brought out of his house. Nothing. They could have. I want to know that the purpose of going to the house was to retrieve a gun on you have a gun and he said I don't have a gun. Great. You know, we're gonna have to go get a gun now. Right, that's a conversation between Palmer to heal and Laura, but then one of them went into car number two right. One of them went into the other car, and considering that they were all appearing for purposes of what the jury could infer to be acting in concert. Wasn't it a fair inference that the person who moved from car one to two was would then report on the progress of the conspiracy. No, that's an imagine. Well, the government offers that in its brief it's an imaginary conversation that was an inference. So if you're asking if you're saying there's no direct testimony I agree with you. But I think there's a difference between what is a reasonable inference and what is not a reasonable interest. Well, if it was that an unreasonable inference that co conspirators, who we already know one was calling from part two to call one. Why is it an unreasonable inference that the communication would have been two way. If it was a reasonable inference, Your Honor, they, the prosecutors would have mentioned that in their closing. Well, I don't think that's the way, you know, I mean, how it works if a prosecutor didn't say it it's not a reasonable inference. No, that didn't. I mean, if it was a reasonable inference, the prosecutor would have got up in front of the jury and said, look, you can infer. That's sort of an estoppel argument. Right. I mean, isn't that an estoppel argument. You're saying the prosecutor is not now allowed to argue that it is no difference if you didn't mention it before. Well, here, here's what's here's what's particularly disturbing about the prosecutor using that in their brief. They met with Mr. Lopez, three times. They wanted him to cooperate. Never, ever did Mr. Lopez tell them that he had a conversation with my client to that effect. So now you're shifting into your other argument. No, I'm saying that that's something that came up in their brief, Your Honor. For the first time, they brought that up in their brief. This imaginary conversation took place. But we're reviewing what the jury could have inferred. We're not reviewing what arguments were posed by the government or not. Right. We're looking at the evidence. The jury could infer. Well, I don't think it's a fair inference to for anyone to infer that a particular conversation took place unless there's evidence of it. Otherwise, I mean, what's the what's the point of evidence you everything could be inferred. And what what the prosecution is doing here, I think, is that they want it they want to impose a different standard. Was it reasonably foreseeable that Laura knew that Caban was armed with a shotgun or armed at all. And that's not the standard that was adopted by the Supreme Court in Roseman. They have to prove that my client knew actually knew that Caban was armed with the shotgun before he used it, because as the court said that up the ante. And Caban, as I say, could have been armed with a baseball bat. He had used one in the past. Beat somebody up. He was known as a thug. He was known as an enforcer. And the idea that you can infer that my client knew that there was a shotgun in that car is unacceptable, I think, because it's the prosecutor's burden to prove that element of the crime beyond a reasonable doubt. And other than this inference about the so-called conversation, the prosecution has had three opportunities so far, a trial, post trial and in their brief to point to a single piece of evidence that my client actually knew that the shotgun was in the car. Now, maybe they'll tell you something different today, but they haven't yet come up with a piece of evidence that my client knew that there was a shotgun in the car. And it was that shotgun that was important. It was that shotgun that the jury had to find that Caban possessed and used to find my client guilty of aiding and abetting. Thank you, Mr. Williams. Thank you, Your Honors. You've reserved a few minutes, three minutes for rebuttal. We'll hear next from the government. Mr. Robles. Good morning, Your Honors. May it please the court. My name is David Robles, Assistant United States Attorney in the Southern District of New York, and I represent the United States on this appeal. I want to start by responding to the argument that defense counsel has raised in today's argument, which is that there wasn't sufficient evidence for a jury to infer that that Laura knew a gun would be used in this case. The evidence about that that's before the court in the record and was before the jury is overwhelming. There was testimony that Laura was the leader of a drug trafficking organization that had a dispute with a rival drug dealer in the neighborhood. There was testimony that prior to the murder, Laura was in the car right behind his co-defendants when they went to go recruit a hitman just before the murder. There was testimony that Lopez, that co-defendant Lopez was in the car with his co-defendants when they asked the hitman if he had any guns. And when the hitman said no, they went to go get guns. And there was testimony that after the guns were picked up, that Lopez, who was in the car from which the guns were brought to, then got into the car with Mr. Laura. Lopez and Laura then circled the block. One of the victims, one of the witnesses, I apologize, said they saw Mr. Lopez and Mr. Laura circling the block two or three times. And it was testimony that Laura then called one of the co-defendants, Mr. Palmer, in the car that had the guns once he had located the victim. There's testimony that then that car went up and shot and killed the victim, Mr. Balcaron. And there was testimony that after the murder, Laura kept selling drugs on that spot for years. And again, after the murder, there was testimony that Mr. Laura or that Lopez, I apologize, told Caban, the hitman here, that the murder had been committed because Laura and his co-defendant, Mr. Palmer, wanted to take over the drug spot. And so I agree with the questions the court was posing to Mr. Williams that, of course, a jury here could have reasonably inferred, based on those facts and the evidence that was before it, that Mr. Laura knew a gun would be used in this case. And I'd respectfully submit to the court that, in fact, that's the only reasonable inference that can be drawn from that evidence. So there was more than sufficient evidence here to convict Mr. Laura on count one of the 924J charge. This argument wasn't addressed, this particular piece of the argument wasn't addressed in today's argument by Mr. Williams, but I did want to briefly address the statements against penal interest that the court properly admitted during the trial that are at issue on this appeal. And I want to start by identifying what is not in dispute with respect to those statements, and which I believe should guide the court's analysis here. And it's that after evaluating the briefing the party submitted about this, and after hearing argument, the district court carefully considered and applied the factors this court set out in Gillette to determine whether to admit those statements. The issue that Laura raises on this appeal is that in applying those factors, the district court didn't take into account the trustworthiness of the declarants. But that misreads the applicable law and it misreads the record. The factors this court laid out in Gillette and the other factors that this court has identified in evaluating whether to admit a statement against penal interest are all aimed at and designed to evaluate both the trustworthiness of the declarant and the statement itself. They're part and parcel of the same inquiry. And importantly, these factors are aimed at determining whether the declarant was being truthful when the statement was made, not whether the declarant is an overall inherently trustworthy person. In fact, as the court... Mr. Robles, when you are... I'm fine with you making this argument and going through it for the court, but in doing so, will you respond to the argument that opposing counsel made that the government has a heightened obligation to show that Lopez was untrustworthy, or that Lopez was trustworthy, given the evidence suggesting he was unreliable? If you could just fold that into your presentation. Yes, Your Honor. As this court recognized in Gupta, Rule 804B3 is, quote, founded on the common sense notion that reasonable people, even reasonable people who are not especially honest, tend to make self-inculpatory statements only when they believe them to be true. Here, the district court properly applied the framework in admitting these statements, and in doing so, didn't abuse its discretion and didn't ignore the trustworthiness of the declarants. Here, as we mentioned in our briefs, both statements were made at and around the time of the charged conduct to trusted co-conspirators who the declarant believed to be allies. There was no indication in the record that at the time the statements were made, the declarants had any reason to fabricate or embellish those statements, to impress each other, to shift blame, or to lie to one another. And there was evidence before the court that established that Lopez and his co-defendants were truthful with each other when these statements were made, including, as I mentioned before, extensive evidence about their drug dealing and that there was a dispute with a rival drug dealer. Wouldn't that just collapse into the sub A, if it's against interest? It sounds like the argument you're making is that if it's against interest, it's inherently trustworthy. Your Honor, I'm not saying that it's inherently trustworthy. Of course, this court has laid out a number of factors to determine whether or not there are sufficient corroborating circumstances that can allow a court to determine that the statement is trustworthy. And here they were. In particular, the court looks at what were the circumstances around the time the statement was made? Who was the person making the statement to? Was there evidence that supported what the government is trying to get in through that statement? And to turn back just briefly to Jeff Perez's question about whether the government had a heightened obligation here. The first thing I would say in response to that, Your Honor, is that these statements weren't critical to the government's case. Even if they had been, though, the government did satisfy its obligations here to establish that these statements were trustworthy at the time they were made. The fact that Lopez proffered with the government, I think it was three times, more than 10 years after the charged conduct and more than 10 years after he made the statements the government sought to admit, whether he made certain inconsistent statements about his own culpability during those proffers doesn't bear on the question of whether the government in good faith believed and properly sought to admit statements he made to co-conspirators as opposed to law enforcement back when the murder was committed in 2002. It goes back again to the point I was trying to make about. In particular, can you just talk with statement number three? To whom did Lopez make that statement? Look, Lopez made the statement to to Caban, to his cousin, who was his cousin, and it was someone he had recruited to commit a murder for him, right? That's correct, Your Honor. So I take it that your argument is, look, Mr. Lopez may not have been a trustworthy cooperator. Maybe he's not a person who you can trust if you talk to the government, but you can trust or you're more likely to be able to trust statements that he made to his cousin, who is also a co-conspirator and with whom he had committed a murder. That's exactly. Roughly your argument here. That's exactly right, Your Honor. And I think that argument is supported by cases we cited in our brief from this court, such as Williams, which is which talks about how statements you look at whether a statement was made to curry favor with authorities. That's not the case here with the statements the government sought to admit, like the case in Saget, where the court looks at whether a statement was made to an ally. Again, here's Your Honor acknowledge. When did you turn over the information about Mr. Lopez's proffer statements to the defense? Those proffer statements were turned over a little over a week prior to trial, Your Honor. Did they, did those proffer statements disclose that Mr. Lopez had made inconsistent statements to the government? They were inconsistent statements with respect to his own sort of culpability. They didn't go to and they didn't bear on the question of whether the statements that the government sought to introduce as a statement against penal interest, whether there was any inconsistency there. You're saying that defense would have been in a position equal to that of the government to make the argument to the court that the statement should come out because in general, he is a person who has made inconsistent statements to the government and therefore anything that he says ought not to be trusted. Is that the gist of your argument? That's absolutely right, Your Honor. The defense could have made those arguments under Rule 806. But again, from the government's perspective, the statements it sought to admit were not statements that were inconsistent or which the government had any reason to doubt. And so for those reasons, unless the court has any further questions, the government will rest on its papers and respectfully submits that the judgment of conviction should be affirmed. Thank you, Mr. Robles. Mr. Williams, you've reserved three minutes for rebuttal. Yes, thank you, Your Honor. Mr. Williams, can I ask you to continue where we just left off with opposing counsel? Do you disagree with any of that? I mean, was the defense provided in advance of trial with copies of Mr. Lopez's proper statements or was that not correct? No, they were, Your Honor. When I was assigned to this case, I reached out and trial counsel sent me his entire file, which included Mr. Lopez's proper statements. That's how I knew that Lopez had, A, provided inconsistent statements. But more importantly, he never mentioned the so-called conversation he had with Caban. So these are arguments that the defense was in a position to be able to make to the district court, right? The district court could have heard from defense counsel the argument that, look, Mr. Lopez has made any number of inconsistent statements to the government. That makes him an untrustworthy person in general. Is that a fair characterization of the record? Yes, that's completely fair. And I have no explanation for why trial counsel didn't mention any of this when he was arguing. That's not on you. That's certainly not. There's two things I wanted to address. First of all, the statement was incredibly important because it's mentioned, as I indicated in my brief, over and over again in the summation. That the reason Belkarin was killed was because Laura wanted to take over the spot. And they mentioned it in their first summation and in their response. But that statement, you have to understand, is inconsistent. That was statement number two, as we've been denominating it, correct? Statement number two is the one that Palmer and Laura… Statement number two is the… Rather than confuse the issue, I will tell you, let me say, when I refer to statement number two, I'm referring to the one that Belkarin was killed in order to take over his drug territory. Perhaps we've gone back and forth what's two and three. With respect to that one, the government argues that there was no contemporaneous objection to the admission of that statement. Is that correct or was that issue preserved? I'm just wondering what our standard of review is, because if there was no proper objection at the time, we would be reviewing for plain error. Can you just clarify what's our standard for the Belkarin? Oh no, that was definitely preserved. They stopped the testimony and they had a conference outside the hearing of the jury about whether that statement was going to come in. It was objected to before trial and then before Caban was allowed to testify to that particular statement, I think there was a conference outside the hearing of the jury. Let me just check that. And I apologize, I may be confusing the two statements. Yeah, that one was a critical one. And I just wanted to point out that that statement, which provides motive obviously for Mr. Lohr to have been involved in this murder, is inconsistent with what Caban told the jury. Caban told the jury that his cousin had been threatened by Belkarin and that Lopez went to Caban because Belkarin had threatened his life and was trying to extort Lopez and Paul. And that's inconsistent with this statement that is attributed to Lopez by Caban. Now, the prosecutors knew after interviewing Mr. Lopez three different times that Lopez never mentioned that alleged statement. And I think, and obviously you're in charge of this, but if the prosecutors know that their hearsay declarant is untrustworthy, has given multiple inconsistent statements, and cannot be used as a witness at trial as a cooperator, that information should not just be shared with defense counsel a week before trial, but should be shared with the trial judge. So the trial judge has an idea about whether or not the hearsay declarant, himself in this case, is a trustworthy person. And I don't know where you're going to come down on that, but if you're going to open the door and allow parties to seek the admission of hearsay evidence under this rule and allow parties not to let the court know that you, as the proponent of the evidence, you know that this person is not trustworthy, then that second, I don't get it. I mean, I just think that they should have told the judge what was going on and let the judge make a decision based on what was in fact fact. And with the presider's permission, I'd just like to ask very briefly, is there anything not in your briefs with respect to your due process or your consecutive sentence claim that you need to bring out right now? No, Your Honor. I included that argument for obvious purposes. There's a split in the circuits. I just wanted to make sure before we wrap this up. Yeah, this circuit has ruled one way and a different circuit has ruled a different way. But we got it. Just wanted to make sure. Well, thank you all very much. I appreciate your attention. Thank you both. We'll take the case under advisement. Thank you.